Filed 8/16/16  In re L.H. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re L.H., a Person Coming Under the Juvenile Court Law. | B269584 (Los Angeles County Super. Ct. No. DK13246) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  V.H.,  Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Terry Truong, Juvenile Court Referee.  Affirmed.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Brian Mahler, Senior Associate County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

V.H. (father), the father of L.H. (born May 2010) and two of L.H.'s siblings,[1] appeals from the juvenile court's jurisdiction and disposition orders finding that he sexually abused L.H., declaring her a dependent child of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (d),[2] and placing L.H. with A.H. (mother). Father contends that there was not substantial evidence to support the juvenile court's jurisdictional finding. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2015, plaintiff and respondent Los Angeles County Department of Children and Family Services (Department) received a referral advising that five-year-old L.H. had disclosed to police that father digitally penetrated her twice when she was four years old, tried to insert his penis into her vagina when she was five years old, and inappropriately touched her on several occasions. Los Angeles County Sheriff Detective Shelby Martin interviewed L.H. The incident report of that interview provides: "[L.H. said that] [e]arly this morning she woke up to her parents arguing. She said her 'daddy was being mean to mommy.' She said she believed her father (suspect) was mad because he wanted to 'make babies with me (referring to herself).' She was unable to expand on what she meant by that. [¶] I asked [L.H.] if [father] ever touched her 'privates.' She then used her right had to point to her vagina and asked, 'here?' I told her 'yes' and

---

[1] L.H.'s two siblings were subject to the dependency action but the allegations concerning them were dismissed. They are not parties to this appeal.

[2] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

asked her if she knew it was called a vagina. She said she did.[3] [¶] . . . [¶] I asked [L.H.] if [father] put anything . . . inside her vagina. She said he 'put his private on my private. He tried to put it in but it wouldn't go in. It hurts really bad from Daddy trying to put it in.' I asked her what she was talking about when she said 'daddy's private.' She pointed to her vaginal area and said, 'you know, his private.' I asked her if she knew what a penis was and she shook her head no. I asked her if 'daddy's private' is the private that all boys have. She said, 'yes.'" Detective Martin's incident report states that she advised the Department that father was in custody but would be released if he posted bail.

The Department's September 9, 2015, detention report states that the Department interviewed Detective Martin who said L.H. "disclosed very detailed information and does not seem to be lying." The Department reported that it interviewed L.H. When L.H. was asked if father had ever touched her private parts, she replied he had touched her private parts on occasion when washing her or when rubbing her vaginal area when she had complained about pain related to urinating. L.H. denied that father put his fingers or anything else in her vagina. The Department interviewed father who denied the sexual abuse allegations, stating "I didn't do anything."

The Department reported that the family had eight prior referrals, including one in 2003 in which the reporting party said mother saw her daughter from a prior relationship, who was then five-years old, touching father's penis, and father having an erection while mother's daughter sat on his lap. Following its investigation, the Department found the allegations of sexual abuse to be inconclusive.

The Department filed a petition on behalf of L.H. and her two minor two siblings under section 300, subdivisions (b), (d), and (j), alleging that in 2015 father fondled L.H.'s vagina; mother knew or reasonably should have known of father's conduct and

---

**3** L.H. said that on two or three occasions when she was four-years-old father touched her vagina and put his fingers inside it "'because sometimes my private parts hurt,'" and father placed his fingers in her vagina the night of the incident, saying "'[d]addy touches it so it doesn't hurt.'"

3

failed to protect L.H.; and the parents' conduct placed the three children at risk of harm. At the detention hearing, the juvenile court found the children were described by section 300, subdivisions (b), (d) and (j), and ordered them to be released to mother.

The Department filed an October 28, 2015, jurisdiction/disposition report which included Detective Martin's incident report regarding her August 29, 2015, interview of L.H. It also attached a supplemental report prepared by Los Angeles County Sheriff Detective Maria Gonzalez stating that on August 31, 2015, she interviewed L.H. and father. L.H. stated that when her "private part" hurt, her parents would apply powder and cream. She said father had occasionally cleaned her vaginal area when giving her a bath, and she denied he had "done anything else" to her vaginal area. During his interview, father denied placing his penis in or around L.H.'s vagina, and said that the only times he had ever touched L.H.'s vagina were when she needed help washing it or when he needed to apply some ointment to it.

On November 19, 2015, L.H. participated in a forensic interview with "Ms. Monica." L.H. said father hugs her, and when he does so he places his hands on her shoulders, elbows, stomach, head, legs, knees, toes, or "body." The only place she does not like it is when he hugs her toes. When Monica asked L.H. if she had told the police that father had "put his finger inside [her] private part and that it hurt," L.H. replied, "I don't know about anything. I don't know what you're talking about." When Monica asked L.H. if she had told her therapist that father had touched her, L.H. replied, "I didn't tell any—anything."

On December 21, 2015, the juvenile court held a contested jurisdiction and disposition hearing. The court admitted into evidence, without objection, the September 9, 2015, detention report, the October 28, 2015, jurisdiction/disposition report, and the compact disc and transcript of Monica's forensic interview with L.H.

Detective Martin testified that she has been employed by Los Angeles County Sheriff's Department for ten years, two as a detective; has conducted 75 to 100 interviews with young children while investigating sexual abuse; and received training on interviewing potential sexual abuse victims. She recounted the information about her

4

interview with L.H. Detective Martin opined L.H. was being truthful with her because L.H.'s "answers came out like it was normal"—"like she was having a conversation"; L.H. "seemed very intelligent [and] bright;" she would not expect a five-year-old child to know about "a penis going into a vagina"; and she would not expect L.H. to make such statements to her given that mother's statements to her regarding father's inappropriate conduct towards L.H. did not include father attempting to place his penis inside L.H.'s vagina.

Father testified that L.H. got rashes in her vaginal area due to urinary issues, and to treat these rashes, he had sprinkled and then rubbed baking powder around that area based on mother's instructions to do so. The last time he had treated L.H.'s rashes in this fashion was when she was four years old. Father denied ever sexually abusing L.H., including by inserting a finger in, fondling, or attempting to insert his penis into L.H.'s vagina.

Mother also testified. She said that she was uncertain whether she saw or felt father's hand on L.H.'s vagina during the incident.[4]

When the juvenile court inquired whether counsel was ready to conduct argument, father's counsel replied, "I had intended to briefly question [L.H.]. I know that this has been something discussed. My belief is that even questioning today, I don't think [L.H.'s] statements would be vastly different from the statements made in the forensic interview."

At the conclusion of the hearing, the juvenile court said, "I don't believe this is as clear cut of a case as counsel makes it out to be. [¶] . . . [¶] [Detective Martin has] been the only one [to whom L.H. said that father attempted to put his penis in her vagina]. This child has not said it again to the [other investigators or interviewers]. So that leaves me to question it. [¶] But again, she did make the statement. And unfortunately, that's what I have to deal with. And there's nothing to refute those statements in that report. [¶] So I reluctantly sustain [the allegations of] D-1 [in the petition] to reflect on

_____

**4** The juvenile court ultimately found mother's statements about "seeing [] father" to be "unclear" as to "whether she saw what she saw."

5

prior occasions in 2015, [L.H.'s father] sexually abused [L.H.] in that the father attempted to penetrate the child's vagina."

The juvenile court amended and sustained the petition, found the children were described by section 300, subdivision (d), and dismissed the allegations under section 300, subdivisions (b) and (j). As amended, the sustained petition read: "On prior occasions in 2015, [father] sexually abused [L.H.] in that the father attempted to penetrate the child's vagina. Such sexual abuse of the child by the father endangers the child's physical health and safety and places the child at risk of harm." The juvenile court declared [L.H.] to be a dependent under section 300, subdivision (d), placed her with mother; granted father monitored visitation; and awarded maintenance services to mother, reunification services to father, and couples counseling if the parents intend to remain together.

## DISCUSSION

Father contends that there was not substantial evidence to support the juvenile court's jurisdictional finding because the juvenile court may not rely solely on the minor's out-of-court statements unless they are reliable. Substantial evidence supports the juvenile court's jurisdictional finding.

### A.    Standard of Review

We review the juvenile court's jurisdiction findings for substantial evidence. (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment . . . . [Citations.] '"[The] [appellate] court must review the whole record in the light most favorable to the

6

judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321.)

### B. Applicable Law

Section 300, subdivision (d), provides for dependency jurisdiction when a child "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code . . . ." Penal Code section 11165.1 defines "sexual abuse" to include both "sexual assault" and "sexual exploitation." Sexual assault includes child molestation [the "annoy[ance] or molest[ion of] any child under 18 years of age"] (Pen. Code, §§ 11165.1, subd. (a) and 647.6); the "[p]enetration, however slight, of the vagina . . . of one person by the penis of another person . . ." (Pen. Code, §§ 11165.1, subd. (b)(1)); or the "[i]ntrusion by one person into the genitals . . . of another person, including the use of any object for this purpose, except that, it does not include acts performed for a valid medical purpose" (Pen. Code, §§ 11165.1, subd. (b)(3)).

Section 355, subsection (b) provides, "A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based . . . ." Section 355, subsection (c)(1) provides, "If a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] . . . [¶] (B) The hearsay declarant is a minor under 12 years of age who is the subject of the jurisdictional hearing. However, the hearsay statement of a minor under 12 years of age shall not be admissible if the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence."

"[S]ection 355 notwithstanding, [to satisfy due process under the United States and California Constitutions[5]] out-of-court statements of a child who is subject to a jurisdictional hearing and who is disqualified as a witness because of the lack of capacity to distinguish between truth and falsehood at the time of testifying may not" form the sole basis for a jurisdictional finding unless there is special indicia of reliability.  (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1247-1248 (*Lucero L.*).

### C.    Analysis

Substantial evidence supports the juvenile court's jurisdictional finding that father sexually abused 5-year old L.H.  L.H. told Detective Martin that L.H. believed her parents were arguing the morning of August 29, 2015, because father wanted to "make babies with me"; and father "put his private on my private.  He tried to put it in but it wouldn't go in.  It hurts really bad from Daddy trying to put it in."  L.H. identified her vagina as her "private" though she did not know what the term "'penis'" meant. L.H. confirmed for Detective Martin that father's "private" was the "'private that all boys have.'"

Father argues that L.H.'s statements to Detective Martin constitute unreliable hearsay, and under *Lucero L.*, *supra*, 22 Cal.4th 1227, cannot constitute substantial evidence.  As previously noted, *Lucero L.* held that out-of-court statements of a minor who is subject to a jurisdictional hearing "and who is disqualified as a witness because of the lack of capacity to distinguish between truth and falsehood at the time of testifying"[6] may not be the only basis for a jurisdictional finding unless the statements are reliable. (*Id*. at pp. 1247-1248.)

---

**5**    U.S. Const., Amend. XIV; Cal. Const., art. I, § 7, subd. (a).

**6**    Evidence Code section 701, subdivision (a) provides that a person is disqualified from testifying if it is shown by a preponderance of the evidence that the witness is, among other things, "(1) [i]ncapable of expressing himself or herself concerning the matter so as to be understood . . . or  [¶]  (2) [i]ncapable of understanding the duty of a witness to tell the truth."

*Lucero L.* is inapposite. In that case, our Supreme Court considered whether section 355 controls when hearsay statements are made by a minor who was deemed incompetent to testify because the child lacked the ability "at the time of testimony to understand the obligation to tell the truth and/or to distinguish between truth and falsehood." (*Lucero L.*, *supra*, 22 Cal.4th at p. 1231.) The court held that in such cases, "Section 355 notwithstanding," due process concerns require the juvenile court to find that the "time, content, and circumstances of the [hearsay] statements provide sufficient indicia of reliability" if those statements are exclusively relied upon by the court when exercising jurisdiction. (*Id*. at pp. 1242, 1247.)

Here, however, the juvenile court did not find L.H. incompetent to testify at the jurisdiction hearing due to her lacking the ability to distinguish between truth and falsehood. Indeed, the court was never called upon to determine L.H.'s competency to testify because none of the parties called L.H. as a witness or claimed that L.H. was incompetent to testify. Father's counsel effectively admitted that L.H. was competent to testify when she said she originally intended to call L.H. as a witness to "briefly question" her about her statements made to Detective Martin. By her own admission, father's counsel had the opportunity to examine L.H. The only reason father's counsel provided for her choice not to call L.H. as a witness was not that defendant's counsel suspected L.H. to be incompetent to testify, but because father's counsel "didn't think [L.H.'s] statements would be vastly different from the statements made in the forensic interview." *Lucero L.* therefore has no application here.

In any event, L.H.'s statements to Detective Martin possessed sufficient indicia of reliability under *Lucero L.* L.H.'s statements were detailed about father's sexually abusive conduct, and the statements describe attempted sexual penetration that a typical five-year-old child would typically not know. Indeed, Detective Martin said L.H. "disclosed very detailed information and [did] not seem to be lying." At the hearing, Detective Martin, an experienced interviewer of children who were potential abuse victims, opined that L.H. was being truthful with her because she spoke with her in a normal and conversational manner, without "stop[ping] and think[ing] about it";

9

understood what questions she was asking her; and she would not expect a five-year-old child to know about "a penis going into a vagina."

In addition, it appears from the record that L.H.'s statements to Detective Martin were the first statements she made to anyone in connection with this dependency case. Substantial evidence supports the juvenile court's jurisdictional finding.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

RAPHAEL, J.*

We concur:

KRIEGLER, Acting P. J.

BAKER, J.

---

*       Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10